UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COUNSEL FINANCIAL SERVICES, LLC,

       Plaintiff,
  v.                 **DECISION AND ORDER**
                          09-CV-1025S
DAVID MCQUADE LEIBOWITZ and DAVID
MCQUADE LEIBOWTZ, P.C.,

       Defendants.

## I. INTRODUCTION

Plaintiff Counsel Financial Services ("CFS") commenced this action on November 25, 2009, seeking an order (1) granting it costs and attorneys fees expended in defending claims brought in violation of a forum-selection clause and (2) permanently enjoining Defendants from litigating in Texas any claims or defenses that are subject to the forum-selection clause. (Docket No. 1.) CFS contemporaneously filed a Motion for Preliminary Injunction, seeking the same injunctive relief. (Docket No. 2.) The next month, on December 29, 2009, Defendants David McQuade Leibowitz and his self-entitled law firm, David McQuade Leibowtz, P.C. (collectively "Leibowitz"), moved to dismiss, or in the alternative, abate this action. (Docket No. 7.)

On March 17, 2010, CFS filed a Motion for Temporary Restraining Order ("TRO") to prevent Defendants from pursuing their own injunction in the 370th Judicial District Court of Hidalgo County ("Hidalgo Court"), but this Court denied that motion on March 18, 2010. (Docket Nos. 17, 18.)

1

Thus, presently before this Court are Leibowitz's Motion to Dismiss or Abate and CFS' Motion for a Preliminary Injunction. For the following reasons, both motions are denied.

## II. BACKGROUND[1]

CFS, a Delaware company with its principle office in Williamsville, New York, provides loans to law firms and lawyers handling contingent-fee cases. (Complaint ¶ 1; Docket No. 1.) In this capacity, CFS executed a Promissory Note ("Note") and a Security Agreement (providing CFS collateral in Leibowitz's future attorneys fees) with Leibowitz in exchange for a five million dollar loan to Leibowitz's law firm.[2,3] (Id., ¶ 4.) Thereafter, alleging default and failure to pay, CFS filed a lawsuit against Leibowitz in the Supreme Court of the State of New York, Erie County. (Id., ¶ 5.) On or about November 25, 2008, CFS obtained a judgment against Defendants in the amount of $5,506,180.96. (Id., ¶ 5, Exhibit E of the Complaint.) Defendants appealed, but the New York Appellate Division, Fourth Department, affirmed the order and judgment on November 20, 2009. (Complaint, ¶ 24; Exhibit F of the Complaint.)

While Leibowitz's New York appeal was pending, in August of 2009, CFS moved to intervene in a personal injury action pending in the Hidalgo Court in which Leibowitz was plaintiff's counsel. (Motion to Intervene, Exhibit C of the Motion to Dismiss; Docket No. 7)

---

[1] Many of the following facts are taken from this Court's previous Decision and Order. All facts were drawn from the Complaint and documents appended to or referenced in the Complaint.

[2] Mr. Leibowitz personally guaranteed that debt. (Id., ¶ 5.)

[3] Whether such an arrangement violates Texas' professional code of conduct is not before this Court.

CFS sought intervention to assert its entitlement – as secured creditor, judgment creditor, and lienholder – to costs and attorneys fees it anticipated that Leibowitz would receive as part of the settlement of the personal injury matter. (Id.) Leibowitz, in response, also sought to intervene in that action, in his personal capacity, to oppose CFS's proposed intervention. (Complaint ¶ 28; Exhibit G of the Complaint.)  Among other things, Leibowitz alleged that it was CFS who breached the Security Agreement, and sought various declaratory and injunctive relief. (Id.) For example, one "counterclaim" alleges that:

> CFS has breached and defaulted under the terms of the Security Agreement by wrongfully accelerating the terms of the Note, charging interest on the Note which they had no right to charge, and by charging fees and expenses which Leibowitz never agreed to pay.

(Answer to Plea in Intervention in Hidalgo Court, § 4.1.7, Exhibit G of Boyle Affirmation; Docket No. 3-3.)

Leibowitz also asserted that CFS has "filed numerous interventions in cases in numerous state and federal district courts making baseless claims with the intent to threaten and intimidate, and multiply the litigation between the parties." (Id., § 2.5.) Leibowitz ultimately sought a temporary injunction restraining CFS from attempting to collect on the New York judgment until that judgment was domesticated by an order of a Texas Court and all appeals were exhausted. (Complaint, ¶ 28.) He also sought to restrict CFS from enforcing its judgment, or making any claim under the Note, in any court except the Hidalgo Court. (Answer to Plea in Intervention, §§ 5.4.2, 5.4.3.)

CFS subsequently removed the Hidalgo Court action to the United States District Court, Southern District of Texas, where it remained until March 8, 2010 when the federal

court remanded the action back to state court. On remand, the Hidalgo Court granted Leibowitz's injunction; but that decision was reversed on July 1, 2011 by the Court of Appeals of Texas, which ruled that: (1) under the Uniform Enforcement of Foreign Judgments Acts, the New York Judgment was entitled to Full Faith and Credit in the Texas court system, and (2) the trial court abused its discretion in granting Leibowitz an anti-suit injunction. Counsel Fin. Servs., LLC v. Leibowitz, No. 13-10-0200-CV, 2011 WL 2652158, at *8-*13 (Tex. App. July 1, 2011).[4]

### III. DISCUSSION

**A.     Leibowitz's Motion to Dismiss**

**1.     Standard – Rule 12(b)(6)[5]**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

---

[4] This ruling occurred after briefing concluded in this case.

[5] Leibowitz moves for dismissal under Rule 12(b)(6) and Rule 12(c). But the standard under Rule 12(c) is the same as that under Rule (12)(b)(6). Shepard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).

Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-

conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

### 2. Leibowitz's Arguments in Support of his Motion

The Note, which constitutes the loan agreement between CFS and Leibowitz, provides that:

> Borrower hereby consents and agrees that any federal or state court located in Erie County, New York, shall have exclusive jurisdiction to hear and determine any claims or disputes between borrower and holder pertaining to this Note or to any matter arising out of or related to this Note.[6]

(Promissory Note § 14, Exhibit A; Docket No. 3) (original capitalized).

However, the Note and the Security Agreement also provide a limited exception, in CFS' favor only, to the New York court's exclusive jurisdiction. The Security Agreement provides:

> [The] Secured Party may, at its option, commence any action, suit or proceeding in any other appropriate forum or jurisdiction to obtain possession or foreclosure upon any collateral, to obtain equitable relief or to enforce any judgment or order obtained by Secured Party.

(Security Agreement, § 13(a), Exhibit B; Docket No. 3) (original capitalized).

Based on the foregoing, CFS argues that Leibowitz breached the forum selection clause when it asserted "counterclaims," brought its own motion for injunctive relief, or otherwise opposed CFS' motion to intervene in the Hidalgo court. CFS asserts that this

---

[6]The parties agreed to a similar provision as applied to Mr. Leibowitz as the guarantor.

breach of the forum selection clause resulted in an expense of over $190,000[7] in attorney fees, which Leibowitz agreed to reimburse under § 7(b) of the Security Agreement. It now seeks to recover those attorney fees and a permanent injunction against Leibowitz barring him from litigating issues relating to the note in any forum but that which is indicated in the Note.

Leibowitz moves to dismiss these claims, arguing (1) this action is barred by the doctrine of merger: (2) he did not violate the forum selection clause, or alternatively: (3) this Court should abstain from this matter in light of the pending Texas action. Each argument will be addressed successively.[8]

       *i.*      *Doctrine of Merger*

"Under the doctrine of merger, '[w]hen a valid and final personal judgment is rendered in favor of the plaintiff . . . [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof.'" Orix Credit Alliance v. Horten, 965 F. Supp. 481, 484 (S.D.N.Y.1997) (quoting Restatement (Second) of Judgments § 18 (1980)). It is closely related to the doctrine of *res judicata* because it is meant to prevent multiple lawsuits based on one cause of action. Id. at 486; Jay's Stores, Inc. v. Ann Lewis Shops, Inc., 15 N.Y.2d 141, 256 N.Y.S.2d 600, 603, 204 N.E.2d 638, 641 (1965).

---

[7] It is unclear from the Complaint if this figure represents fees expended in Texas only, or if it includes fees expended in reducing the debt to a judgment in New York as well.

[8] Although unaddressed by either party, this Court feels it prudent to note that, under New York law, an action to recover attorney fees based on breach of a forum-selection clause, specifically authorized by the contract, is permissible. See Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank, 304 A.D.2d 429, 431, 758 N.Y.S.2d 308 (1st Dep't 2003) ("[D]amages may be obtained for breach of a forum selection clause"); c.f. Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc., --- F. Supp. 2d ----, No. 09–CV–10182, 2011 WL 2566061, at *9 (S.D.N.Y. June 29, 2011) (ultimately disagreeing with Indosuez and concluding that New York Court of Appeals would not allow recovery of attorney fees but only if there were no contractual agreement otherwise).

Leibowitz seeks to apply this doctrine to bar CFS' suit arguing that CFS "now wants a second judgment on the very same instruments which were the basis for the New York Default Judgment." (Defendants' Memorandum of Law in Support of their Motion to Dismiss, p. 14; Docket No. 7.) But Leibowitz misapplies this doctrine, which does not serve to limit a plaintiff to one suit based on one "instrument," but instead limits a plaintiff to one suit based on one event or series of events. As the Second Circuit has explained the related doctrine of *res judicata*, "[w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." N.L.R.B. v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir.1983).

Here, the facts and evidence supporting CFS' action regarding Leibowitz's default are entirely separate and distinct from those supporting its action regarding Leibowitz's breach of the forum-selection clause, which did not even occur until after the judgment in New York was entered. In the former, CFS alleged that Leibowitz did not meet his payment obligations under the Note. In the latter, CFS alleged that Leibowitz brought claims in a Texas court in a separate violation of the Note. Although these claims arise out of the same document, they find their foundation in a different set of facts. As such, the merger doctrine does not apply. See Prime Mgmt. Co., Inc. v. Steinegger, 904 F.2d 811, 815 (2d Cir. 1990) ("Thus, when the parties have entered into a contract to be performed over a period of time and one party has sued for a breach, *res judicata* will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first suit; *it will not,*

8

*however, bar a subsequent suit for any breach that had not occurred when the first suit was brought*") (emphasis added); Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 75 S. Ct. 865, 99 L. Ed. 1122 (1955) ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.").[9]

Having denied the motion on this ground, this Court will take this opportunity to note that Leibowitz makes several passing references to the fact that his "claims" in Texas were compulsory counterclaims or defenses to CFS' suit. (See Leibowitz Reply Memorandum, § 3.5; Docket No. 16; Leibowitz Memorandum in Opposition to Preliminary Injunction, § 1.1; Docket No. 12.) However, he never argues, in substance, that this fact should relieve him of his obligations under the forum-selection clause. Nor has this issue been addressed by CFS. This Court's own research has revealed no cases where a plaintiff has brought a forum-selection-violation claim, seeking monetary damages, when it initiated the out-of-forum proceedings.[10] Nor has either party brought any such case to this Court's attention.

---

[9] CFS also alleges that Leibowitz breached the Note and Security Agreement "by failing to repay amounts owed to CFS." (Complaint, ¶¶ 35, 41.) Without further detail, it is unclear whether, through this allegation, CFS seeks attorney fees, costs, and/or damages associated with Leibowitz's initial default and CFS' efforts at securing the New York judgment. To the extent that it does seek fees and damages for those claims that were known at that time, in conjunction with the discussion above, those claims would be barred by merger or *res judicata*. See, e.g., Roe v. Smith, 278 N.Y. 364, 368 (1938) ("The promise to pay the amount of the note and the promise to pay the costs of collection constituted a single obligation, embodied in the negotiable instrument"); Commonwealth State Bank v. Klenhandler, No. 18 MS 0302, 1996 WL 204480, at *1 (S.D.N.Y. April 25, 1996) (Sotomayor, J.) (same).

[10] One court has addressed a somewhat similar, yet factually distinguishable claim. In Bires v. WalTom, LLC., the plaintiff himself violated the forum-selection clause by filing a case in the wrong forum. 662 F. Supp 1019, 1039 (N.D. Ill. 2009). In a separate action, he successfully moved to dismiss the defendant's case, which was filed in the correct forum, in favor of his own. Id. Later, he sought attorney fees because the defendant's counterclaim violated the forum-selection clause. Id. The judge called the claim "patently ridiculous" and "ludicrous." Id.

The Second Circuit has noted that compulsory counterclaims would be barred by a forum-selection clause, but in the same case also suggested that the bifurcation between a plaintiff's claims and a defendant's compulsory counterclaims that would result from the application of such a clause "seems plainly at odds with . . . the purpose of Fed. R. Civ. P. 13(a)." Karl Koch Erecting Co. v. N.Y. Convention Ctr. Dev. Corp., 838 F.2d 656, 659 (2d Cir.1988). At least one other Circuit found that, despite its name, the counterclaim is not compulsory, and a defendant need not – and indeed, cannot – bring compulsory counterclaims if precluded by a forum-selection clause. Publicis Commc'n v. True N. Commc'ns Inc., 132 F.3d 363, 366 (7th Cir. 1997) (Easterbrook, J.). Instead, Judge Easterbrook found that the clause represents a promise by plaintiffs not to invoke the defense of claim preclusion in a later suit. Id. But this relatively complex issue has not been briefed, and without full briefing, this Court will not rule, at this time, that the compulsory nature of any of Leibowitz's claims absolves him of a violation under the forum-selection clause. See Gill v. I.N.S., 420 F.3d 82, 92 (2d Cir. 2005) (Jacobs, J., dissenting) (expressing reservations about courts raising and ruling on issues *sua sponte*, without briefing.)

    ii.  *Forum Selection Exclusivity*

Leibowitz argues that a forum-selection clause will not be enforced unless it is clear that the parties intended the chosen forum to be the exclusive forum for litigation. See, e.g., Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989). He argues that the exception carved out in CFS' favor destroys that exclusivity, rendering it unenforceable.

While Leibowitz is correct that there exists both permissive and mandatory forum

selection clauses and that "a forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language" see Phillips v. Audio Active Ltd., 494 F.3d 378, 386 (2d Cir. 2007), he cites no authority for the proposition that a forum cannot be exclusive as to one party but not as to the other. Here, the Note expressly provides that New York shall have "exclusive jurisdiction" for claims brought by Leibowitz. Although it also allows CFS to bring claims for "equitable relief or to enforce any judgment" in any other "appropriate forum or jurisdiction" this Court finds no reason to hold, and no authority is cited, that such a clause destroys the exclusivity as it applies to Leibowitz.

The Second Circuit has noted "that contracts entered into freely[,] generally should be enforced because the financial effect of forum selection and choice of law clauses likely will be reflected in the value of the contract as a whole." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993) (citing Carnival Cruise Lines v. Shute, 499 U.S. 585, 593, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991); see also A.P. Moller-Maersk v. Ocean Express Miami, 590 F. Supp. 2d 526, 532 (S.D.N.Y. 2008) ( "New York has a well-established public policy of enforcing forum selection agreements.") (Internal citation and quotation marks omitted). This Court finds no reason to upset this "well-established" principle, especially considering that a court should seek "to give effect to the intent of the parties as revealed by the language of their agreement." Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 157 (2d Cir. 2000) (Sotomayor, J.). In fact, the parties' intent appears to be the central reason why courts have drawn a sharp line between permissive and mandatory forum-selection clauses:

courts want to be sure that the parties intended for a strict limitation to apply. See Docksider, 875 F.2d at 764 ("When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the *parties' intent to make jurisdiction exclusive*") (emphasis added); John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., 22 F.3d 51, 53 (2d Cir. 1994) (citing City of New York v. Pullman Inc., 477 F. Supp. 438, 443 (S.D.N.Y. 1979)) ("The normal construction of the jurisdiction rules includes a presumption that, where jurisdiction exists, it cannot be ousted or waived absent a *clear indication of such a purpose*.") (Emphasis added).

Here, two sophisticated parties entered into an unambiguous contract that limited jurisdiction to the courts of New York with an exception for claims brought by CFS to enforce a judgment against Leibowitz. Leibowitz has proffered no reasons why the presumption of validity that attaches to both forum-selection clauses and the clear intent of the parties should be overcome in this case. See Roby, 996 F. 2d at 1363 (describing presumption of validity);[11] see also Karl Koch, 838 F.3d at 660 (non-mutuality of forum-selection clause does not render it unenforceable even though New York courts, at the time, required mutuality in arbitration agreements); Silverman v. Carvel Corp., 192 F. Supp. 2d 1, 5 (W.D.N.Y. 2001) ("If any doubt remained about the matter after Karl Koch,

---

[11]The presumption of validity may be overcome by a clear showing that the clause is "unreasonable under the circumstances." Roby, 996 F.2d 1263 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L .Ed. 2d 513 (1972)). But the "Supreme Court has construed this exception narrowly: forum selection . . . clauses are 'unreasonable' (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party 'will for all practical purposes be deprived of his day in court,' due to the grave inconvenience or unfairness of the selected forum . . . or [(3)] if the clauses contravene a strong public policy of the forum state." Id. (internal citations omitted). Leibowitz makes no argument that the clause is "unreasonable" and therefore these factors will not be considered at this time.

however, it has been removed by the New York Court of Appeals' subsequent abrogation of the rule requiring mutuality in arbitration agreements."). Therefore, reading the Note as it is written, this Court must deny Leibowitz's motion on this ground.

**B.    Leibowitz's Motion to Abate**

Absent dismissal, Leibowitz asks this Court to abate this action until the matter in the Southern District of Texas is concluded. But these two matters involve different claims. The action in Texas concerned CFS' motion to intervene, by which it sought to enforce its judgment. Leibowitz then responded with his own motion to intervene, by which he sought to enjoin CFS from intervening. But here, CFS has sought attorney fees for an alleged violation of the forum-selection clause. Indeed, according the forum-selection clause, New York is the only forum in which this matter can be ligated because CFS' exception applies only to actions in which it seeks enforcement of a judgment. (See Note ¶ 14.)

Further, the action in the Southern District of Texas has already been remanded and appealed in the state system, and the appellate court has already ruled that CFS can enforce its judgment in Texas. Counsel Fin. Servs., 2011 WL 2652158 at *8. With that action seemingly final, there is, therefore, no reason that this court cannot proceed. Accordingly, Leibowitz's motion to abate is denied.

**C.    CFS' Motion for a Preliminary Injunction**

CFS relies on the All-Writs Act, 28 U.S.C. § 1651, as the basis for this Court's authority to issue an injunction. Under the All–Writs Act, district courts, in their discretion, "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Id.  It "grants district courts the power,

under certain circumstances, to enjoin parties from filing further lawsuits." MLE Realty Assocs. v. Handler, 192 F.3d 259, 261 (2d Cir.1999). An injunction under the All-Writs Act is an "extraordinary" remedy that "invests a court with a power that is essentially equitable." Clinton v. Goldsmith, 526 U.S. 529, 537, 119 S. Ct. 1538, 1543, 143 L. Ed. 2d 720 (1999).

CFS argues that the injunction in Leibowitz's favor, issued by the Hidalgo Court, impairs this Court's jurisdiction under the forum-selection clause and thus this Court should exercise its authority under the All-Writs Act. But since the time that CFS sought this relief, that injunction has been overturned by the Texas appellate court, rendering moot any concerns that the injunction might have had on this Court's ability to hear this case.

Further, as noted, this Court denied CFS' Motion for a TRO on March 18, 2010. Since that time, CFS has not presented any facts that would alter this finding. Although that Decision related to one specific action in state court and CFS' Motion for a Preliminary Injunction applies to all future actions, this Court finds that the reasoning employed in denying that relief is equally applicable here.[12] For example, in the March 18, 2010 Decision, this Court found that the motion should be denied because CFS failed to meet the threshold requirement of an anti-suit injunction: the parties to both suits must be identical. See China Trade & Dev. Corp. v. M.V. Chong Yong, 837 F.2d 33, 36 (2d Cir.1987). Because CFS has sought (and presumably, will seek) to enforce its judgment by intervention, additional parties will always be present.

---

[12]"The legal standards for granting a temporary restraining order and a preliminary injunction are the same." Young-Flynn v. Wright, No. 05 Civ. 1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (quoting Gund, Inc. v. SKM Enters., Inc., No. 01 Civ. 0882, 2001 WL 125366, at *1 (S.D.N.Y. Feb. 14, 2001)).

CFS has also not shown that "resolution of the case before the enjoining court is dispositive of the action to be enjoined," which is the second threshold requirement. Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 119 (2d Cir. 2007). As this Court has already stated, "it does not appear that this Court's resolution of the Complaint before it, involving CFS' alleged entitlement to post-judgment costs and fees, will be dispositive of the dispute in the Hidalgo Court over CFS' security interest in Defendants' attorneys' fees." (Decision and Order, p. 6.)

Even though those findings, standing alone, would be sufficient to deny the injunction, CFS also fails to meet the traditional requirements of a preliminary injunction. Citing the Eleventh Circuit, CFS argues that under the All-Writs Act, it does not need to meet those requirements. But, whether under the All-Writs act or not, an injunction issued at this time would still have the effect of restraining Leibowitz before final adjudication on the merits. Perhaps recognizing that concern, recent Second Circuit case law has held that a party seeking a preliminary anti-suit injunction must also satisfy the traditional test for a preliminary injunction. See Software A.G., Inc. v. Consist Software Solutions, Inc., 323 Fed. Appx. 11, 12 (2d Cir. 2009) (summary order); In re Millenium Seacarriers, Inc., 458 F.3d 92, 98 (2d Cir. 2006). Under that test, the movant must demonstrate:

> (1) irreparable harm should the injunction not be granted, and
> (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.

N.A.A.C.P., Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995) (quoting Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991)); see also SmithKline

15

Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc., 211 F.3d 21, 24 (2d Cir. 2000). Irreparable harm is defined as an injury that cannot be fully remedied by monetary damages. Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005).

It does not appear that even CFS, itself, believes that the harm will be "irreparable" because its Complaint seeks monetary damages in connection with the very acts – the Texas litigation – that its seeks to enjoin. Moreover, even if CFS is mistaken and monetary damages are unavailable, this case does not present concerns typically implicated by an anti-suit injunction in a forum-selection context. CFS, not Leibowitz, is the party that has affirmatively commenced litigation outside this forum. Thus, absent an injunction, CFS will not be compelled to litigate in an inadequate or disfavored forum. Rather, it may simply be required to defend actions that it chooses to bring. As such, this Court finds that CFS will not be subject to irreparable harm without a preliminary injunction. C.f. Int'l Fashion Prods., B.V. v. Calvin Klein, Inc., No. 95 Civ. 0982, 1995 WL 92321 at *2 (S.D.N.Y. March 7, 1995) (finding irreparable harm where defendant was "*compelled* to litigate on two continents and may be subject to inconsistent rulings") (emphasis added).

For these reasons, and those outlined in the March 18, 2010 Decision and Order, CFS' motion is denied.

## IV.  CONCLUSION

CFS' Motion for a Preliminary Injunction and Leibowitz's Motion to Dismiss or Abate are each denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for a Preliminary Injunction

(Docket No. 2) is DENIED.

FURTHER, that Defendants' Motion to Dismiss or Abate (Docket No. 7) is DENIED.

SO ORDERED.

Dated: March 26, 2012
      Buffalo, New York

                                           /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                             Chief Judge
                                United States District Court